NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | |
| Plaintiff, | |
| v. | Civil Action No.: 10-3789 (CCC) |
| LEAH EDRINGTON, et al., | **OPINION** |
| Defendants. | |

**CECCHI**, District Judge.

Plaintiff J & J Sports Productions ("J & J Sports") moves for default judgment against Leah Edrington, individually and as principal of The Blu Door Cigar Lounge, LLC doing business as The Blu Door Cigar also known as Blu Door Cigar ("Blu Door") pursuant to Federal Rule of Civil Procedure 55. The motion is decided without oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court grants J & J Sports' motion.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff J & J Sports, a California corporation located in California, is an international distributor of sports and entertainment programming. (Compl. ¶ 6.) Plaintiff purchased the exclusive territorial rights to distribute the November 14, 2009 Pacquaio/Cotto Boxing event ("Pacquaio Event") to commercial establishments. (Compl. ¶¶ 17-19.) On July 28, 2010 Plaintiff filed a complaint against Defendants Leah Edrington and her business, Blu Door. Plaintiff alleged that Defendants illegally and willfully intercepted the program for the purpose of obtaining a commercial or financial advantage. (Compl. ¶ 20.)

In order to protect its rights to the Pacquaio Event, Plaintiff hired investigative services to identify commercial establishments that were unlawfully intercepting and publicly displaying the Pacquaio Event without Plaintiff's authorization. (See Affidavit of Joseph Gagliardi ¶ 5; Ex. A.) On November 14, 2009, an independent investigator/auditor witnessed the commercial display of the Pacquaio Event at Defendant's commercial establishment. (See Id. ¶ 7; Ex. C.) According to Plaintiff, Defendants did not purchase the rights to broadcast the Pacquiao Event from Plaintiff and were therefore not authorized to show the event. (Id. ¶ 6.)

In particular, Plaintiff alleges that Defendants unlawfully intercepted the Pacquaio Event when they "used an illegal satellite receiver, intercepted Plaintiff's signal and/or used a device to intercept Plaintiff's broadcast, which originated via satellite uplink and then re-transmitted via satellite or microwave signal to various cable and satellite systems." (Compl. ¶ 21). Plaintiff alleges that this conduct violates 47 U.S.C. § 605. (Id. ¶¶ 23-25). Plaintiff seeks maximum and enhanced statutory damages under this statute as well as attorney's fees and costs.

Defendant Blu Door was served with process on August 14, 2010 and Defendant Edrington was served with process on August 18, 2010. (See ECF Docket Entry Nos. 4 & 5.) On October 22, 2010, Leah Edrington filed a letter with this Court, stating that neither she nor Blu Door had been properly served and that they had legally purchased the Pacquaio Event on November 14, 2009. (Letter from Leah Edrington, Oct. 22, 2010, ECF Docket No. 8.) However, Defendants failed to make an appearance on the record, answer the complaint, oppose the instant motion for default judgment, or otherwise defend themselves. On October 14, 2011, J & J Sports moved for default judgment against all Defendants and the Clerk's Office entered default. This Court terminated the pending motion for default judgment and ordered the case to Mediation on August 8, 2011. The Defendants failed to appear at the

mediation conference and Plaintiff's motion for default judgment was reinstated against all Defendants on November 22, 2011.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs the entry of default judgment. This Court is authorized to enter a default judgment based solely on the fact that a default has occurred. *Anchorage Assocs. V. Virgin Is. Bd. Of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). The Court will treat the factual allegations in the complaint as conceded by the defendant and will acknowledge them as true, except as to damages. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). The Court must make an independent determination regarding any question of law and will "consider whether the unchallenged facts constitute a legitimate cause of action." *DIRECTV, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (internal quotation marks and citations omitted). The Court will deny a default judgment if the complaint fails to state a claim. To properly state a claim, a plaintiff must plead "sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)) (internal quotation marks omitted). When considering whether to enter a default judgment, the Court may take into account a number of factors including: (1) whether the plaintiff will be prejudiced by denial of default judgment; (2) whether the defendant has a meritorious defense; and (3) whether the defendant's delay in responding is the result of his own culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

## III. DISCUSSION

### A. Liability Under 47 U.S.C. § 605

In its complaint, J & J Sports seeks relief under either 47 U.S.C. § 605 or 47 U.S.C. §553. These statutes prohibit the unauthorized interception and broadcast of communications. Both statutes have common elements that require the plaintiff to show that the defendants (1) intercepted a broadcast; (2) were not authorized to intercept the broadcast; and (3) showed the broadcast to others. 47 U.S.C. §§ 553, 605; J&J Sports Prods. v. Gencarelli, No. 10-cv-4513, 2011 U.S. Dist. LEXIS 32523, at *4-5 (D.N.J. Mar. 28, 2011); J&J Sports Prods. v. Gallegos, No. 08-201, 2008 U.S. Dist. LEXIS 61066, at *6-8 (D.N.J. Aug. 5, 2008). Additionally, these statutes allow for enhanced damages if the plaintiff proves that the interception of the broadcast was willful and for commercial advantage or private gain. Id.

Here, Plaintiff has alleged sufficient undisputed facts to support the common elements of both statutes. Plaintiff owned the exclusive rights to distribute the Pacquaio Event on November 14, 2009. (See Gagliardi Aff ¶ 3; Ex. A.) Plaintiff hired independent auditors to identify commercial establishments that were unlawfully broadcasting the program. (Id. ¶ 4; Ex. C.) An independent auditor discovered that Defendants were broadcasting the Pacquiao Event at their commercial establishment to twenty-seven individuals and charging a fee of $10.00 for entry. (Id. ¶ 7; Ex. C.) Therefore, Plaintiff alleges that Defendants intercepted the Pacquiao Event without authorization, and exhibited the broadcast at their commercial establishment willfully and for commercial advantage or private gain. (See Id.)

The pirating of television programs, such as that which occurred here, either falls within the purview of § 553 or §605 but cannot fall within both. See TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 207 (3d Cir. 2001). In its complaint, Plaintiff acknowledges that it cannot determine the manner in which the Defendants intercepted the signal, whether it was through a cable system in violation of § 553 or a satellite transmission in violation of § 605, without further

discovery or admission by Defendants. (Compl. ¶ 33.) This Court has addressed this problem in previous cases by "not faulting Plaintiff . . . for failing to plead the particular manner of interception since this may be exclusively within the Defendants' knowledge." J&J Sports Prods. v. Podermo, No. 06-1374, 2007 U.S. Dist. LEXIS 21137, at *2 (D.N.J. Mar. 26, 2007). This Court has awarded damages in an "authorized amount of statutory damages for the illegal interception of programs under either § 553 or § 605." Id. at *4. Following that precedent, the Court is satisfied that that J & J Sports has pled facts that give rise to a cause of action either under § 553 or § 610 and it is entitled to statutory and enhanced damages authorized under those statutes.

### B. DAMAGES

J & J Sports seeks an award of $10,000 in statutory damages and $30,000 in enhanced damages from each Defendant for a total of $80,000. (Pl.'s Mem. at 16.) Both § 553 and § 605 permit Plaintiff to elect to receive statutory damages based on statutory guidelines and judicial discretion rather than actual damages. 47 U.S.C. §§ 553, 605. Section 605 allows for basic statutory damages of "not less than $1,000 or more than $10,000" plus enhanced damages of "not more than $100,000." § 605. Section 553 provides basic statutory damages of "not less than $250 or more than $10,000" and enhanced damages of "not more than $50,000." § 553.

Courts in this District have awarded statutory damages in excess of actual damages for the purpose of deterrence. See Comcast Cable Comm. v. Bowers, Civ. No. 06-1664, 2007 U.S. Dist. LEXIS 38513, at *12 (D.N.J. May 25, 2007) (awarding statutory damages in the amount of $10,000 where actual damages were much less in order to serve as a deterrent). However, Courts have also declined to award the maximum statutory damages when there is a large discrepancy between the maximum statutory damages and actual damages, despite its deterrent

5

effect. See J&J Sports Prods. v. Munguti, Civ. No. 06-1282, 2007 U.S. Dist. LEXIS 22096, at *3 (D.N.J. March 26, 2007) (awarding statutory damages of $1,200 and noting that "[t]o award Plaintiff the maximum amount of enhanced statutory damages, or even a substantial amount of such damages under these circumstances, would significantly overcompensate Plaintiff").

The Court may also award enhanced damages under § 553 and § 610. Under these statutes, enhanced damages are appropriate when the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain." §§ 553(c)(3)(B), 610(e)(3)(C)(ii). In determining whether to award enhanced statutory damages, Courts have taken into consideration whether the defendant advertised the broadcast, charged a cover fee to view the broadcast, received increased profits from the sale of food and beverages, illegally exhibited other events at their establishment, or otherwise profited from their illegal interception of the program. See Munguti, 2007 U.S. Dist. LEXIS 22096 at *11 (awarding $800 in enhanced damages where defendants showed the event to approximately eighty people, but there was no evidence that defendants charged a cover or advertised the event); J & J Sports Prods. v. Gallegos, Civ. No. 08-201, 2008 U.S. Dist. LEXIS 61066, at *8 (D.N.J. Aug. 5, 2008) (awarding $1,000 in enhanced statutory damages where the event was only shown to nine customers and no evidence was shown that defendants charged a cover or advertised); Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02-7972, 2003 U.S. Dist. LEXIS 2674 at *1-2 (S.D.N.Y. Feb. 24, 2003) (awarding $1,000 in enhanced damages where plaintiff showed no proof that defendants advertised the event or charged a cover to the approximately forty customers in attendance).

Here, Plaintiff asserts that it suffered at least $2,200 in actual damages, based on the amount that Defendants would have paid to legitimately purchase the right to commercially exhibit the Pacquaiao Event. (Pl.'s Mem. at 13; Ex. A.) The Court is satisfied that this an

6

appropriate amount of statutory damages and will provide a sufficient deterrent effect. As such, the Court will award Plaintiff $2,200 in statutory damages.

Plaintiffs also allege that Defendants showed the Pacquiao Event to approximately forty-eight people and charged a cover charge of $10.00 per person to view the broadcast. (Pl.'s Mem. at 3-4.) In light of this, the Court is satisfied that the profit earned by Defendants warrants enhanced statutory damages of $2,000. Therefore, J & J Sports is awarded enhanced and statutory damages in the total amount of $4,200.

### D. ATTORNEY'S FEES

Sections 553 and 605 permit the court to award reasonable attorney's fees and costs to an aggrieved party that prevails on a claim. 47 U.S.C. §§ 553(c)(2)(C), 605(e)(3)(B)(iii). Plaintiff has requested an award of attorney's fees and costs in the amount of $4,395. (See Lonstein Aff., Nov. 29, 2011, ECF Docket No. 21.) Plaintiff supports this figure with an affidavit from its attorney detailing the hours that he and his paralegal worked and the costs expended. (Id.) The Court is satisfied that these fees are reasonable and awards Plaintiff attorney's fees and costs in the amount of $4,395.

### IV. CONCLUSION

Based on the foregoing, Plaintiff's motion for default judgment is granted in the amount of $4,200 in statutory and enhanced damages and $4,395 in attorney's fees and costs against Defendants jointly and severally.

Dated: February 16, 2012

HON. CLAIRE C. CECCHI
United States District Judge